UNITED STATES of America ex rel.
Hector Juan RIVERA, Petitioner,

v.

Howard PETERS, III, Warden, Pontiac Correctional Center, and Neil F. Hartigan, Attorney General, State of Illinois, Respondents.

No. 90 C 825.

United States District Court,
N.D. Illinois, E.D.

Aug. 28, 1990.

Hector Juan Rivera, pro se.

Neil F. Hartigan, Atty. Gen., State of Ill. by Bradley P. Halloran, Asst. Atty. Gen., Chicago, Ill., for respondents.

## ORDER

BUA, District Judge.

Hector Juan Rivera, an inmate at Pontiac Correctional Center, is currently serving a 40–year prison term for a gang-related street shooting. Rivera now petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the court denies Rivera's petition.

## FACTS

On November 21, 1983, Jose Rodriguez and Israel Delgado were shot while standing in a street located on Chicago's west side. As both victims lay wounded on the ground, Rodriguez noticed Rivera walking toward them with a revolver in his hand. Rivera approached Delgado and pointed the gun at his head. Rivera "clicked" the gun three times and walked away. Rodriguez and Delgado then fled in separate directions.

Upon his arrival at the hospital, Delgado lost consciousness from his bullet wounds. He died later that evening. Rodriguez was treated at the hospital for a single gunshot wound to his leg. When he was released from the hospital, Rodriguez went to the police station and identified Rivera in a lineup.

At trial, Rodriguez' depiction of the shooting incident was corroborated by another eyewitness, Evonne Stanfield. Stanfield testified that she was watching television in her home when she heard the gunshots. She leaned out of her window and saw Rivera running from a gangway next to her home. Stanfield saw Rivera walk up to Rodriguez and point a gun at him. Rivera then turned around and began walking toward Stanfield's house. Noticing Stanfield in the window, Rivera pointed the gun at her. Stanfield immediately shut her window and lay down on the floor. Several hours after the incident occurred, Stanfield also identified Rivera in a police lineup.

Following the jury trial, Rivera was convicted for the murder of Delgado and the attempted murder of Rodriguez. Rivera appealed to the Illinois Appellate Court, and the court affirmed his conviction. *See People v. Rivera*, 137 Ill.App.3d 1155, 101 Ill.Dec. 809, 499 N.E.2d 176 (1985). Rivera did not appeal to the Illinois Supreme Court.

## DISCUSSION

In his habeas petition, Rivera raises two arguments. First, he claims that his conviction should be set aside because the testimony of Rodriguez and Stanfield was inconsistent. Second, Rivera argues that the state trial court committed reversible error when it allowed the prosecution to introduce evidence of Rivera's gang affiliation. In opposition to Rivera's petition, respondent asserts that Rivera has waived both of these arguments because he failed to appeal his conviction to the Illinois Supreme Court.

■ Generally, if a criminal defendant fails to appeal his conviction to the highest court of the state, he is deemed to have waived his right to habeas corpus relief. *See Nutall v. Greer*, 764 F.2d 462, 464–65 (7th Cir.1985). This general rule, however, is subject to the "cause and prejudice" standard set forth in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As respondent correctly points out, Rivera is barred from seeking habeas relief unless he can show cause for his failure to appeal and prejudice from the alleged trial errors.

■ In an attempt to show cause, Rivera argues that his default should be excused because he is indigent and relatively uneducated. Despite Rivera's reference to his financial plight and lack of education, he had an adequate opportunity to pursue an appeal. A criminal defendant such as Rivera enjoys meaningful access to the state's highest court when he is provided with a trial transcript, a brief filed on his behalf in the appellate court, and an opinion by the appellate court disposing of his case. *Ross v. Moffitt*, 417 U.S. 600, 615, 94 S.Ct. 2437, 2446, 41 L.Ed.2d 341 (1974). Rivera had access to these materials; yet he made no effort to appeal to the Illinois

Supreme Court. Rivera did not even seek assistance in filing a petition for leave to appeal. Having provided no legitimate justification for his failure to appeal, Rivera's default will not be excused.

Because Rivera has not shown cause for his default, the court does not have to reach the issue of whether he suffered prejudice from the alleged trial errors. *See Morrison v. Duckworth,* 898 F.2d 1298, 1301 (7th Cir.1990). In any event, Rivera has also failed to demonstrate prejudice.

■ In support of his claim for habeas relief, Rivera argues that the testimony of the two eyewitnesses was "inconsistent" and "improbable." But this court may not reweigh the evidence; it is entirely within the province of the jury, as the trier of fact, to assess the credibility of the witnesses and resolve conflicts in their testimony. *United States v. Goodman,* 797 F.2d 468, 471 (7th Cir.1986); *United States v. Faurote,* 749 F.2d 40, 44–45 (7th Cir. 1984). A jury's verdict will be set aside in a habeas action only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979).

According to Rivera, the testimony of Rodriguez and Stanfield was insufficient to establish guilt beyond a reasonable doubt. Rivera arrives at this conclusion based solely on an inconsistency in Rodriguez' testimony. Rodriguez initially told the police that Rivera was wearing a ski mask at the time of the shooting. However, Rodriguez later explained to the police that Rivera was merely wearing a ski cap, leaving his face exposed. Although Rivera attributes great significance to this inconsistency, there was sufficient evidence to support a conviction. Stanfield also testified that Rivera wore a ski cap during the shooting, and that he pulled the cap off as he walked away from the scene of the crime. Both Rodriguez and Stanfield viewed Rivera under circumstances conducive to a positive identification. Rodriguez saw Rivera face-to-face while Rivera was pointing his gun at Delgado. Similarly, Stanfield looked directly at Rivera as he walked toward her house. Having observed Rivera at close range, both eyewitnesses were able to positively identify Rivera in a police lineup and again at trial. In light of this evidence, a rational trier of fact could have found proof of guilt beyond a reasonable doubt. The court sees no basis for disturbing the jury's verdict.

■ Rivera also attacks his conviction on the grounds that the trial court erroneously admitted evidence of his gang affiliation. In spite of this argument, evidentiary rulings by a state trial court should rarely be the subject of habeas review. *Cramer v. Fahner,* 683 F.2d 1376, 1385 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). Unless the erroneously admitted evidence rendered the trial fundamentally unfair, the conviction will not be invalidated. *See id.*

■ During Rivera's trial, the prosecution introduced evidence of a gang-related street fight between Rivera, a member of the "Latin Disciples" street gang, and Delgado, who was a member of a rival gang known as the "Young Dragons." The fight erupted two days prior to the shooting incident, when Rodriguez and Delgado were exiting a friend's apartment. Rivera, who was standing in the street with several other gang members, announced that he was a "Dragon killer." Acknowledging his membership in the Young Dragons, Delgado boasted that he was a "Disciple killer." Following this exchange of threats, Rivera and Delgado briefly scuffled without weapons. When the fighting ceased, Rivera told Delgado to "watch his back."

Rivera claims that this evidence was so prejudicial that he was essentially denied a fair trial. This court disagrees. To a certain extent, evidence of a defendant's membership in unpopular organizations will be prejudicial. But the probative value of Rivera's gang affiliation outweighed its prejudicial effect. After all, Rivera and Delgado were participants in an intense rivalry, which manifested itself just two days prior to the shooting incident. Such a heated street conflict over gang representation could certainly have provided a motive for the murder of Delgado. Indeed, the Illi-

nois Appellate Court found the evidence of Rivera's gang affiliation to be "clearly relevant." *See People v. Rivera,* No. 84–2903, slip op. at 7 [137 Ill.App.3d 1155, 101 Ill. Dec. 809, 499 . N.E.2d 176 (table)]. The trial court's evidentiary ruling was correct and, therefore, it will not provide a basis for granting habeas relief.

## CONCLUSION

For the foregoing reasons, Rivera's petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.